IN THE SUPREME COURT OF TEXAS
 
════════════
No. 08-0613
════════════
 
Nafta Traders, Inc., 
Petitioner,
 
v.
 
Margaret A. Quinn, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 8, 
2009
 
 
            
Justice Hecht delivered the 
opinion of the Court, in which Chief 
Justice Jefferson, Justice 
Wainwright, Justice Medina, 
Justice Green, Justice Johnson, Justice Willett, Justice Guzman, and 
Justice Lehrmann joined.
 
            
Chief Justice Jefferson 
filed a concurring opinion, in which Justice Wainwright and Justice Lehrmann joined.
 
 
            
“The answer to most questions regarding arbitration ‘flow inexorably from 
the fact that arbitration is simply a matter of contract between the 
parties.’”[1] Nevertheless, the United States Supreme 
Court has held in Hall Street Associates, L.L.C. v. Mattel, Inc., that 
the grounds for vacating or modifying an arbitration award under the Federal 
Arbitration Act (FAA)[2] “are exclusive” and cannot be 
“supplemented by contract”.[3] The principal questions in this case are 
whether the Texas General Arbitration Act (TAA)[4] likewise precludes an agreement for 
judicial review of an arbitration award for reversible error, and if not, 
whether the FAA preempts enforcement of such an agreement. We answer both 
questions in the negative and consequently reverse the judgment of the court of 
appeals[5] and remand the case to that court for 
further proceedings.
I
            
Petitioner, Nafta Traders, Inc., an 
international re-distributor of athletic apparel and footwear, terminated its 
employment of respondent, Margaret A. Quinn, its Vice President of Operations, 
citing as the basis for its decision a reduction in force due to worsening 
business conditions. Quinn sued Nafta for sex 
discrimination in violation of the Texas Commission on Human Rights Act.[6] Nafta’s 
employee handbook included a section captioned “Arbitration”, which called for 
“a dispute arising out of [the] employment relationship 
. . . or its termination” to be submitted to binding 
arbitration. The arbitration section did not indicate whether state or federal 
law would apply, providing only that “[a]ll 
proceedings shall be conducted in the City of Dallas, State of Texas.”[7] Nafta moved to 
compel arbitration under the FAA, which applies to “contract[s] evidencing a 
transaction involving commerce”.[8] Quinn did not object, and the district 
court signed an agreed order.
            
The parties then selected an AAA arbitrator, who heard evidence and 
awarded Quinn $30,000 in back pay, $30,000 in mental anguish damages, $29,031 in 
“special damages”,[9] $104,828 in attorney fees, and costs. A 
verbatim record was made of the proceedings. Quinn moved the court to confirm 
the award under the TAA. Nafta moved for vacatur under the FAA, the TAA, the common law, and a 
provision in the arbitration section of the employee handbook that stated: “The 
arbitrator does not have authority (i) to render a 
decision which contains a reversible error of state or federal law, or (ii) to 
apply a cause of action or remedy not expressly provided for under existing 
state or federal law.” Nafta argued in part that by 
agreeing to these limits on the arbitrator’s authority the parties had in effect 
agreed to expand the narrow scope of judicial review otherwise provided by the 
TAA and the FAA.
            
As grounds for vacating the award, Nafta 
asserted that the arbitrator had applied federal law to Quinn’s sex 
discrimination claim even though she had alleged only a violation of Texas law, 
and that the evidence did not support a finding of sex discrimination. Regarding 
damages, Nafta asserted that the attorney fee award 
was improper, that the “special damages” award was really a double recovery of 
lost wages, and that the evidence did not support an award of mental anguish 
damages. Quinn responded that none of the grounds asserted by Nafta is recognized by the TAA or the FAA as a basis for 
vacating an arbitration award, and that neither the TAA nor the FAA permits the 
grounds for vacating an arbitration award to be enlarged by agreement. Even if 
such an agreement were permissible, Quinn argued, the statement in the handbook 
was too vague and one-sided to be enforced. And finally, she contended, even if 
the grounds asserted by Nafta could be considered, 
they should all be rejected as meritless.
            
The district court issued a brief order simply confirming the 
arbitrator’s award without giving any indication whether it had considered the 
substance of Nafta’s complaints and rejected them or 
instead had concluded that the TAA or FAA did not permit consideration of such 
grounds for vacatur. Nafta 
appealed.[10] After oral argument in the court of 
appeals but before an opinion had issued, the United States Supreme Court 
decided Hall Street Associates, L.L.C. v. Mattel, Inc., holding that the 
FAA’s grounds for vacatur and modification “are 
exclusive” and cannot be “supplemented by contract”.[11] Although the court of appeals applied 
the TAA in this case rather than the FAA, noting that neither Nafta nor Quinn had disputed on appeal that the TAA governed 
their arbitration,[12] it concluded that similarities between 
the two statutes weighed heavily in favor of construing the TAA as Hall 
Street had construed the FAA.[13] Accordingly, the court held that 
“parties seeking judicial review of an arbitration award covered under the TAA 
cannot contractually agree to expand the scope of that review and are instead 
limited to judicial review based on the statutory grounds enumerated in the 
statute.”[14]
            
One such statutory ground is section 171.088(a)(3)(A), that an arbitrator 
has exceeded his power,[15] and Nafta 
argued that the arbitrator had exceeded his power by issuing an erroneous award 
when the arbitration agreement denied him the authority to commit reversible 
error or apply an action or remedy contrary to law.[16] The court of appeals rejected Nafta’s argument because, it explained, while an arbitrator 
exceeds his power by deciding an issue the parties did not agree to submit to 
him, he does not exceed his power by deciding matters incorrectly.[17] Moreover, the court said, Nafta could not use section 171.088(a)(3)(A) “to accomplish 
indirectly what we have already concluded it cannot do directly, that is, 
contractually expand judicial review of the arbitration decision.”[18] Having decided 
that none of Nafta’s complaints fell within any of the 
statutory grounds for vacatur, the court affirmed the 
district court’s judgment.[19]
            
We granted Nafta’s petition for review.[20]
II
            
The TAA, which is based on the Uniform Arbitration Act,[2][1] lists specific grounds for 
vacating,[22] modifying, or correcting[23] an arbitration award and provides that 
unless such grounds are offered, “the court, on application of a party, shall 
confirm the award.”[24] One such ground for vacating an 
arbitration award is that “the arbitrators 
. . . exceeded their powers”.[25] In arbitration conducted by agreement of 
the parties, the rule is well established that “[a]n arbitrator derives his 
power from the parties’ agreement to submit to arbitration”.[26] As the United States Supreme Court has 
stated:
 
Whether enforcing an agreement to arbitrate or construing an 
arbitration clause, courts and arbitrators must give effect to the contractual 
rights and expectations of the parties. In this endeavor, as with any other 
contract, the parties’ intentions control. 
This is because an arbitrator derives his or her powers from the parties’ 
agreement to forgo the legal process and submit their disputes to private 
dispute resolution.[27]
 
Nafta and Quinn agreed that an arbitrator appointed to 
resolve disputes between them “does not have authority (i) to render a decision which contains a reversible error of 
state or federal law, or (ii) to apply a cause of action or remedy not expressly 
provided for under existing state or federal law.” Unless there is some reason 
to exclude such limitations from the general rule that the parties’ agreement 
determines arbitral authority, Nafta’s contention that 
the arbitrator exceeded his authority raises a ground to vacate the award, and 
the court of appeals erred in holding to the contrary.
            
Quinn argues that her agreement to limit the arbitrator’s authority is in 
effect an agreement for broader judicial review of the arbitration award than 
permitted by the TAA for the same reasons it is not permitted under similar 
provisions of the FAA, as the United States Supreme Court held in Hall 
Street. Sections 10 and 11 of the FAA specify grounds for vacating,[28] modifying, or correcting[29] an arbitration award that are similar to 
the TAA’s, and like the TAA, section 9 of the FAA mandates confirmation absent 
such grounds.[30] In Hall Street, the parties had 
tried part of their dispute to the federal district court and then agreed to 
submit another part to arbitration.[31] They agreed that the court could “enter 
judgment upon any award” unless “the arbitrator’s findings of facts are not 
supported by substantial evidence, or . . . the arbitrator’s 
conclusions of law are erroneous.”[32] The Supreme Court held that this 
agreement impermissibly enlarged the grounds for vacating or modifying an 
arbitration award under the FAA.[33]
            
We must, of course, follow Hall Street in applying the FAA, but in 
construing the TAA, we are obliged to examine Hall Street’s reasoning and 
reach our own judgment. The Supreme Court based its decision on the framework of 
the FAA and on policy. It found that “textual features” of sections 9, 10, and 
11 were “at odds with enforcing a contract to expand judicial review following 
the arbitration.”[34] Because the grounds listed in sections 
10 and 11 all “address egregious departures from the parties’ agreed-upon 
arbitration” and “extreme arbitral conduct”, the FAA did not, the Court 
reasoned, “authorize contracting parties to supplement review for specific 
instances of outrageous conduct with review for just any legal error.”[35] Further, the Court observed, section 9 
“carries no hint of flexibility”; it “unequivocally tells courts to grant 
confirmation in all cases, except when one of the ‘prescribed’ exceptions 
applies”, and does not merely “tell a court what to do just in case the parties 
say nothing else.”[36] This 
construction, the Court added, was consistent with policy favoring limited 
judicial review:
 
Instead of fighting the text, it makes more sense to see the 
three provisions, §§ 9-11, as substantiating a national policy favoring 
arbitration with just the limited review needed to maintain arbitration’s 
essential virtue of resolving disputes straightaway. Any other reading opens the 
door to the full-bore legal and evidentiary appeals that can render informal 
arbitration merely a prelude to a more cumbersome and time-consuming judicial 
review process, and bring arbitration theory to grief in post-arbitration 
process.[37]
 
            
We agree with Quinn that while the Supreme Court and the parties in 
Hall Street framed the issue as “expandable judicial review 
authority”,[3][8] the flip-side is limited arbitral 
decision-making authority, the aim of Quinn and Nafta’s agreement. Though the parties in Hall Street 
did not couch their agreement in terms of limiting the arbitrator’s authority to 
issue a decision unsupported by the law and the evidence, that was certainly the 
practical effect of what they expressly agreed to — that the court could not 
“enter judgment” on such a decision. The parties in Hall Street attempted 
to accomplish indirectly the same end that Quinn and Nafta sought directly — a limit on the arbitrator’s 
authority.
            
Yet the Supreme Court, in holding that under the FAA the grounds for 
vacating, modifying, or correcting an arbitration award cannot be expanded 
beyond those listed in sections 10 and 11, did not discuss section 10(a)(4), which like section 171.088(a)(3)(A) of the TAA, 
provides for vacatur “where the arbitrators exceeded 
their powers”.[39] The omission appears to us to undercut 
the Supreme Court’s textual analysis. When parties have agreed that an 
arbitrator should not have authority to reach a decision based on reversible 
error — in other words, that an arbitrator should have no more power than a 
judge — a motion to vacate for such error as exceeding the arbitrator’s 
authority is firmly grounded in the text of section 10. The Supreme Court’s 
reasoning that an arbitrator’s merely legal errors are not the kind of 
“egregious departures from the parties’ agreed-upon arbitration” section 10 
addresses loses force when such errors directly contradict the parties’ express 
agreement and deprive them of the benefit of their reasonable expectations.
            
When parties have agreed to limit an arbitrator’s power to that of a 
judge, whose decisions are reviewable on appeal, and the complaint is that the 
arbitrator’s decision exceeds his powers, a statutory ground for vacatur, the only way to maintain a textual argument for 
limited judicial review is to hold that such an agreement is not encompassed by 
the statutory provision and unenforceable. In other words, the textual argument 
entails that arbitrators can never, by committing reversible error, “exceed 
their powers” within the meaning of section 10(a)(4), regardless of the parties’ 
agreement. But the FAA itself imposes no such limitation on parties’ right of 
contract.[40] On the contrary, as the Supreme Court 
noted, “the FAA lets parties tailor some, even many features of arbitration by 
contract, including the way arbitrators are chosen, what their qualifications 
should be, which issues are arbitrable, along with 
procedure and choice of substantive law.”[41] Furthermore, the Court recognized a 
“general policy of treating arbitration agreements as enforceable”.[42] The Court regarded this general policy 
as “beg[ging] the question . . . whether the 
FAA has textual features at odds with enforcing a contract to expand judicial 
review following the arbitration”,[43] but one such “textual feature[]” is 
section 10(a)(4), which requires vacatur when 
arbitrators exceed their authority. Whether that feature is at odds with 
expanded judicial review depends on whether the right to contract to 
circumscribe arbitral authority includes limiting the authority to err in 
decision-making.
            
The Supreme Court’s textual analysis, when taking account of the complete 
statutory text, circles back to the question whether parties can agree to limit 
an arbitrator’s power to err. If not, then section 10(a)(4) is consistent with the Court’s analysis, but if so, the 
analysis would appear to be flawed. It is the statutory text that begs the 
policy question, not policy that begs the statutory construction issue.
            
The Supreme Court stated that it “makes . . . sense” 
for there to be “a national policy favoring arbitration with just the limited 
review needed to maintain arbitration’s essential virtue of resolving disputes 
straightaway.”[44] One difficulty with this statement of 
national policy is that the Court had previously identified the enforcement of 
private agreements as the FAA’s “overriding goal”, writing:
 
The legislative history of the [FAA] establishes that the 
purpose behind its passage was to ensure judicial enforcement of privately made 
agreements to arbitrate. We therefore reject the suggestion that the overriding 
goal of the Arbitration Act was to promote the expeditious resolution of claims. 
The Act, after all, does not mandate the arbitration of all claims, but merely 
the enforcement — upon the motion of one of the parties — of privately 
negotiated arbitration agreements.[45]
 
Hall 
Street dismissed these words as taken out of context, explaining that all 
the Court had said was that arbitration should be expedited, in accordance with 
the parties’ agreement, despite pending litigation, even if proceeding in 
different forums is not the most efficient course for resolving the 
disputes.[46] But the Court has since reaffirmed that 
“[t]he ‘principal purpose’ of the FAA is to ‘ensur[e] 
that private arbitration agreements are enforced according to their 
terms’”,[47] so Hall Street cannot fairly be 
read to replace the FAA’s “principal purpose” of enforcing arbitration 
agreements with arbitration’s “essential virtue” of expedition in determining 
what policy should guide its textual interpretation.[48] Parties agree to arbitration for reasons 
other than speed and cost, such as flexibility, privacy, and in some instances, 
expertise.[49] In some cases, at least, whether 
arbitration reduces cost and delay at all is fiercely debated. In any event, it 
would hardly make sense to force more expedition on parties than they want. If 
we were to identify an essential virtue of arbitration, it would be that it is a 
creature of agreement.
            
But assuming that the ultimate goal of arbitration is haste, the abiding 
difficulty with a policy against expanded judicial review, and correspondingly, 
limited arbitral authority, is that the Court could not itself say whether the 
policy was a good one:
 
Hall Street and its amici say 
parties will flee from arbitration if expanded review is not open to them. One 
of Mattel’s amici foresees flight from the 
courts if it is. We do not know who, if anyone, is 
right, and so cannot say whether the exclusivity reading of the statute is more 
of a threat to the popularity of arbitrators or to that of courts. But whatever 
the consequences of our holding, the statutory text gives us no business to 
expand the statutory grounds.[50]
 
A national 
policy favoring limited judicial review that turns out to be inimical to 
arbitration could hardly reside comfortably alongside the “national policy 
favoring arbitration” that the Supreme Court has held Congress declared in the 
FAA.[51] But without denying that possibility, 
the Court concluded that the statutory text leaves no alternative.
            
Thus, the search for a policy to justify limited judicial review winds 
back around to the statutory text, which, as we have already seen, is what 
commissioned the expedition in the first place. The problem comes down to this. 
Under the TAA (and the FAA), an arbitration award must be vacated if the 
arbitrator exceeds his powers. Generally, an arbitrator’s powers are determined 
by agreement of the parties. Can the parties agree that an arbitrator has no 
more power than a judge, so that his decision is subject to review, the same as 
a judicial decision? Hall Street answers no, based on an analysis of the 
FAA’s text that ignores the provision that raises the problem, and a policy that 
may be at odds with the national policy favoring arbitration. With great 
respect, we are unable to conclude that Hall Street’s analysis of the FAA 
provides a persuasive basis for construing the TAA the same way.
            
The Supreme Court expressed concern that “a more cumbersome and 
time-consuming judicial review process [would] bring arbitration theory to grief 
in post-arbitration process”,[52] and we agree that delay and resulting 
expense are concerns that arbitration is intended, at least, to 
alleviate.[53] But equally grievous is a 
post-arbitration process that refuses to correct errors as the parties intended, 
and of equal concern is a civil justice system that allows parties an 
alternative to litigation only if they are willing to risk an unreviewable 
decision. The California Supreme Court, declining to follow Hall Street 
in construing its own state’s statute, offered this assessment:
 
The judicial system reaps little benefit from forcing parties 
to choose between the risk of an erroneous arbitration award and the burden of 
litigating their dispute entirely in court.
 
. . . There are also significant benefits to the 
development of the common law when arbitration awards are made subject to merits 
review by the parties’ agreement. . . . These advantages, obtained 
with the consent of the parties, are substantial.[54]
 
            
As a fundamental matter, Texas law recognizes and protects a broad 
freedom of contract. We have repeatedly said that
 
if there is one thing which more than another public policy 
requires it is that men of full age and competent understanding shall have the 
utmost liberty of contracting, and that their contracts when entered into freely 
and voluntarily shall be held sacred and shall be enforced by Courts of 
justice.[55]
 
We find 
nothing in the TAA at odds with this policy.[56] On the contrary, the purpose of the TAA 
is to facilitate arbitration agreements, which have been enforceable in Texas by 
Constitution or statute since at least 1845.[57] Specifically, the TAA contains no policy 
against parties’ agreeing to limit the authority of an arbitrator to that of a 
judge, but rather, an express provision requiring vacatur when “arbitrators [have] exceeded their 
powers”.[58]
            
Quinn argues that an agreement like the one in this case is one-sided, 
but we fail to see how. Had the arbitration award gone against her and against 
the law and evidence, the agreement would have been to her benefit. We have said 
that an arbitration agreement may be so one-sided as to be unconscionable,[5][9] but the benefits or burdens of judicial 
review for reversible error fall to each side alike.
            
The Supreme Court in Hall Street squarely rejected the argument 
that an agreement to expand the statutory grounds for judicial review of an 
arbitration award is an invalid attempt to confer jurisdiction on a court by 
contract:
 
Because the FAA is not jurisdictional, there is no merit in 
the argument that enforcing the arbitration agreement’s judicial review 
provision would create federal jurisdiction by private contract.[60]
 
The TAA, also, 
is not jurisdictional, and the argument has no more merit with respect to Texas 
courts’ jurisdiction. Nothing more need be said on the subject.
            
We are mindful of the TAA’s mandate that it “be construed to . . . make uniform the construction of other 
states’ law applicable to an arbitration.”[61] But the states are already divided over 
whether their own statutes permit agreements for expanded judicial review of 
arbitration awards: three say yes,[6][2] five say no.[63] In construing the TAA, we are obliged to 
be faithful to its text.
            
Accordingly, we hold that the TAA presents no impediment to an agreement 
that limits the authority of an arbitrator in deciding a matter and thus allows 
for judicial review of an arbitration award for reversible error.
III
            
When, as in this case, an arbitration agreement is covered by both state 
and federal law,[6][4] state law is preempted “to the extent 
that it actually conflicts with federal law — that is, to the extent that it 
‘stands as an obstacle to the accomplishment and execution of the full purposes 
and objectives of Congress.’”[65] Having concluded that the TAA permits 
parties to agree to expanded judicial review of arbitration awards, we must 
determine whether the FAA, which under Hall Street precludes such 
agreements, preempts Texas law. That is, do such agreements thwart Congress’s 
purposes and objectives in the FAA?
            
In Volt Information Sciences, Inc. v. Board of Trustees of Leland 
Stanford Junior University, the Supreme Court explained the FAA’s preemptive 
effect as follows:
 
The FAA was designed to overrule the judiciary’s long-standing 
refusal to enforce agreements to arbitrate and to place such agreements upon the 
same footing as other contracts. While Congress was no doubt aware that the Act 
would encourage the expeditious resolution of disputes, its passage was 
motivated, first and foremost, by a congressional desire to enforce agreements 
into which parties had entered. Accordingly, we have recognized that the FAA 
does not require parties to arbitrate when they have not agreed to do so, nor 
does it prevent parties who do agree to arbitrate from excluding certain claims 
from the scope of their arbitration agreement. It simply requires courts to 
enforce privately negotiated agreements to arbitrate, like other contracts, in 
accordance with their terms.[66]
 
FAA-preemption 
is thus aimed at state-law hindrances to enforcement of arbitration agreements 
not applicable to contracts generally. We have explained it this way:
 
The FAA only preempts the TAA if: (1) the agreement is in 
writing, (2) it involves interstate commerce, (3) it can withstand scrutiny 
under traditional contract defenses under state law, and (4) state law affects 
the enforceability of the agreement. . . . The mere fact that a 
contract affects interstate commerce, thus triggering the FAA, does not preclude 
enforcement under the TAA as well. For the FAA to preempt the TAA, state law 
must refuse to enforce an arbitration agreement that the FAA would enforce, 
either because (1) the TAA has expressly exempted the agreement from coverage, 
or (2) the TAA has imposed an enforceability requirement not found in the 
FAA.[67]
 
            
In Volt, the parties chose California law to govern their 
arbitration agreement.[68] When a dispute 
arose between them, one demanded arbitration while the other filed suit, joining 
two strangers to the agreement as defendants. The state trial court stayed the 
arbitration pursuant to a provision of the California Arbitration Act that 
authorized a court “to stay arbitration pending resolution of related litigation 
between a party to the arbitration agreement and third parties not bound by it, 
where ‘there is a possibility of conflicting rulings on a common issue of law or 
fact.’”[69] Though the FAA 
contains no similar provision, the Supreme Court held that the FAA did not 
preempt state law:
 
In recognition of Congress’ principal purpose of ensuring that 
private arbitration agreements are enforced according to their terms, we have 
held that the FAA pre-empts state laws which require a judicial forum for the 
resolution of claims which the contracting parties agreed to resolve by 
arbitration. But it does not follow that the FAA prevents the enforcement of 
agreements to arbitrate under different rules than those set forth in the Act 
itself. Indeed, such a result would be quite inimical to the FAA’s primary 
purpose of ensuring that private agreements to arbitrate are enforced according 
to their terms. Arbitration under the Act is a matter of consent, not coercion, 
and parties are generally free to structure their arbitration agreements as they 
see fit. Just as they may limit by contract the issues which they will 
arbitrate, so too may they specify by contract the rules under which that 
arbitration will be conducted. Where, as here, the parties have agreed to abide 
by state rules of arbitration, enforcing those rules according to the terms of 
the agreement is fully consistent with the goals of the FAA, even if the result 
is that arbitration is stayed where the Act would otherwise permit it to go 
forward. By permitting the courts to “rigorously enforce” such agreements 
according to their terms, we give effect to the contractual rights and 
expectations of the parties, without doing violence to the policies behind by 
the FAA.[70]
 
            
State law was not preempted, even though it operated to stay arbitration 
that would have gone forward under federal law. The parties’ agreement was 
enforced, not thwarted, by application of the California law they had chosen. 
The Supreme Court concluded that the FAA’s purposes and objectives are not 
defeated by conducting arbitration under state-law procedures different from 
those provided by the federal statute. Indeed, as Volt acknowledged, it 
is not clear to what extent the FAA’s procedures, prescribed expressly for 
federal courts, ever apply in state courts.[71] Section 10 of the FAA, the basis of the 
decision in Hall Street, is itself addressed only to “the United States 
court in and for the district wherein the award was made”.[72] The lesson of Volt is that the 
FAA does not preempt all state-law impediments to arbitration; it preempts 
state-law impediments to arbitration agreements.
            
The opinion in Hall Street, as we have discussed, seems at one 
point to promote expedition as the primary goal of the FAA. But if expedition is 
the touchstone for FAA-preemption, then Volt was incorrectly decided, 
since it upheld the use of state law to delay arbitration. Though Hall 
Street’s majority did not cite Volt, the Court has since relied on 
it.[73] With Volt intact, we cannot read 
Hall Street’s discussion of the importance of expedition to displace as 
the principal basis for preemption the protection of parties’ 
agreements.[74] More importantly, Hall Street 
expressly contemplates that the FAA will not preempt state law that allows 
agreements to enlarge judicial review of arbitration awards:
 
In holding that [FAA] §§ 10 and 11 provide exclusive regimes 
for the review provided by the statute, we do not purport to say that they 
exclude more searching review based on authority outside the statute as well. 
The FAA is not the only way into court for parties wanting review of arbitration 
awards: they may contemplate enforcement under state statutory or common law, 
for example, where judicial review of different scope is arguable. But here we 
speak only to the scope of the expeditious judicial review under §§ 9, 10, and 
11, deciding nothing about other possible avenues for judicial enforcement of 
arbitration awards.[75]
 
Dissenting 
from the Court’s construction of the FAA, Justice Breyer emphasized that the Court was in agreement that its 
decision would not have preclusive effect. Citing the passage of the Court’s 
opinion we have just quoted, and a part of Justice Stevens’ dissenting opinion, 
he stressed:
 
The question presented in this case is whether “the Federal 
Arbitration Act . . . precludes a 
federal court from enforcing” an arbitration agreement that gives the court the 
power to set aside an arbitration award that embodies an arbitrator’s mistake 
about the law. Like the majority and Justice Stevens, and primarily for the reasons 
they set forth, I believe that the Act does not preclude enforcement of 
such an agreement.[76]
 
These 
passages, we think, refute any argument that Volt’s reasoning applies 
only to the procedure by which arbitration is conducted, not the procedure by 
which awards are reviewed. The only reasonable reading of the opinions in 
Hall Street, in our view, is that the FAA does not preempt state law that 
allows parties to agree to a greater review of arbitration awards.[77]
            
It was not necessary for Quinn and Nafta to 
choose the TAA to govern their agreement, nor would that choice alone have 
provided them expanded judicial review of an arbitration award. The TAA, as we 
have construed it, permits parties to agree to expanded review, or to a corresponding limit on the arbitrator’s 
authority, as in this case, but it does not impose such review on every 
arbitration agreement. Nor was it necessary for Quinn and Nafta to choose not to be governed by the FAA, since even if 
it applies, as it does in this case, it does not preempt the parties’ agreement 
for expanded judicial review. The matter is left to the agreement of the 
parties. But absent clear agreement, the default under the TAA, and the only 
course permitted by the FAA, is restricted judicial review.[78]
            
For these reasons, we hold that the FAA does not preempt enforcement of 
an agreement for expanded judicial review of an arbitration award enforceable 
under the TAA.
IV
            
An arbitration award is not susceptible to full judicial review merely 
because the parties have agreed. A court[79] must have a sufficient record of the 
arbitral proceedings, and complaints must have been preserved, all as if the 
award were a court judgment on appeal.[80] For efficiency’s sake, arbitration 
proceedings are often informal; procedural rules are relaxed, rules of evidence 
are not followed, and no record is made. These aspects of arbitration, which are 
key to reducing costs and delay in resolving disputes, 
must fall casualty to the requirements for full judicial review. The parties can 
decide for themselves whether the benefits are worth the additional cost and 
delay, but the only review to which they can agree is the kind of review courts 
conduct. If error cannot be demonstrated, an award must be presumed 
correct.[81]
            
By the same token, arbitration parties cannot agree to a different 
standard of judicial review than the court would employ in a judicial proceeding 
involving the same subject matter. “[A]n arbitration agreement providing that a 
‘judge would review the award by flipping a coin or 
studying the entrails of a dead fowl’ would be unenforceable.”[82]
            
Here, the parties have submitted a record of the arbitration proceeding, 
including a transcript of the evidence offered. Nafta 
has attacked the award on several legal grounds and challenged the sufficiency 
of the evidence. On remand, the court must determine whether the record is 
sufficient to review Nafta’s complaints.
V
            
In the trial court, Nafta invoked the provision 
of its agreement with Quinn limiting the arbitrator’s authority “to render a 
decision which contains a reversible error of state or federal law, or . . . to apply a cause of action or remedy not 
expressly provided for under existing state or federal law”, and raised its 
arguments under this provision for vacating the award. Since the trial court’s 
order confirming the award gives no basis for its decision, we must presume that 
the court rejected Nafta’s arguments in substance. 
Nafta raised the same arguments in the court of 
appeals, but the court did not reach them, concluding instead that even if 
meritorious, they were not grounds for vacatur. 
Because we disagree, the judgment of the court of appeals must be reversed and 
the case remanded to that court for consideration of the merits of Nafta’s 
challenges to the arbitration award.
            
It is so ordered.
 
                                                                        
                                                                                    

                                                                        
Nathan L. Hecht
                                                                        
Justice
Opinion issued: May 13, 2011









[1] 
Perry Homes v. Cull, 258 S.W.3d 580, 593 (Tex. 2008) (quoting First 
Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)).

[2] 
9 U.S.C. §§ 1-16. All references to the FAA 
are to these provisions.

[3] 552 U.S. 576, 578 (2008).

[4] Tex. Civ. Prac. & Rem. Code 
§§ 171.001-.098. All 
references to the TAA are to these provisions.

[5] 257 S.W.3d 795 (Tex. App.–Dallas 
2008).

[6] Tex. Lab. Code §§ 21.001-.556.

[7] 
The section in full read as follows:
 
“In 
the event there is a dispute arising out of your employment relationship with 
the Company or its termination which the parties are unable to resolve through 
direct discussion or the Complaint Resolution Procedure that would involve a 
litigable claim, regardless of the kind or type of dispute (excluding insured 
workers’ compensation claims [other than wrongful discharge claims], claims for 
unemployment insurance, administrative claims before the National Labor 
Relations Board, the Equal Employment Opportunity Commission or any parallel 
state or local agency), the parties agree to submit such dispute to binding 
arbitration in lieu of pursuing a trial in a court of law.
 
“The arbitration will be conducted by the American 
Arbitration Association or other mutually agreeable arbitration service. The 
arbitrator will be selected by mutual agreement from a list of five, or through 
alternative strikes from a second list of five. In all other respects, the 
arbitration process will be conducted in accordance with the American 
Arbitration Association Employment Arbitration rules with each party’s expenses 
therefrom to be borne by that party unless otherwise 
determined by the arbitrator. The arbitrator shall be required to state in a 
written opinion the facts and conclusions of law relied upon to support the 
decision rendered. The arbitrator does not have authority (i) to render a decision which contains a reversible error of 
state or federal law, or (ii) to apply a cause of action or remedy not expressly 
provided for under existing state or federal law. All proceedings shall be 
conducted in the City of Dallas, State of Texas. The duty to arbitrate described 
above shall survive the termination of the employee’s employment with the 
Company. The provisions of the Employee Handbook constitute a knowing and 
voluntary waiver of the parties’ rights to a jury trial.”

[8] 9 U.S.C. § 2.

[9] 
While unemployed, Quinn used $6,000 in personal 
savings, took out a $5,000 loan on her life insurance policy, withdrew $15,000 
from her 401(k) plan, incurring a $1,572 penalty, and paid $1,459 COBRA expenses 
to maintain her health insurance. These amounts comprised the “special 
damages”.

[10] Quinn also 
appealed from the district court’s denial of her claim for attorney fees 
incurred in the confirmation proceeding. The court of appeals affirmed, and 
Quinn has not petitioned for review.

[11] 552 U.S. 576, 578 (2008).

[12] 257 S.W.3d 795, 797 (Tex. App.–Dallas 
2008).

[13] Id. at 
798. The parties acknowledged at 
oral argument in this Court that they have both taken different positions 
concerning the applicability of the FAA and TAA during this 
proceeding.

[14] Id. at 
799.

[15] Tex. Civ. Prac. & Rem. 
Code § 171.088(a)(3)(A).

[16] 257 S.W.3d at 799.

[17] Id.

[18] Id.

[19] Id. at 
799-800.

[20] 52 Tex. Sup. 
Ct. J. 447 (Mar. 27, 2009).

[21] See In re 
Gulf Exploration, LLC, 289 S.W.3d 836, 839 (Tex. 2009) (noting that “most 
states (including Texas) have adopted the Uniform Arbitration 
Act”).

[22] Tex. Civ. Prac. & Rem. 
Code § 171.088(a) (“On application of 
a party, the court shall vacate an award if: (1) the award was obtained by 
corruption, fraud, or other undue means; (2) the rights of a party were 
prejudiced by: (A) evident partiality by an arbitrator appointed as a neutral 
arbitrator; (B) corruption in an arbitrator; or (C) misconduct or wilful misbehavior of an arbitrator; (3) the arbitrators: 
(A) exceeded their powers; (B) refused to postpone the hearing after a showing 
of sufficient cause for the postponement; (C) refused to hear evidence material 
to the controversy; or (D) conducted the hearing, contrary to Section 171.043, 
171.044, 171.045, 171.046, or 171.047, in a manner that substantially prejudiced 
the rights of a party; or (4) there was no agreement to arbitrate, the issue was 
not adversely determined in a proceeding under Subchapter B, and the party did 
not participate in the arbitration hearing without raising the objection.”); 
cf. Unif. Arbitration Act 
§ 23(a), 7 U.L.A. 77-78 (2000) (“Upon [motion] to the court by a party to 
an arbitration proceeding, the court shall vacate an award made in the 
arbitration proceeding if: (1) the award was procured by corruption, fraud, or 
other undue means; (2) there was: (A) evident partiality by an arbitrator 
appointed as a neutral arbitrator; (B) corruption by an arbitrator; or (C) 
misconduct by an arbitrator prejudicing the rights of a party to the arbitration 
proceeding; (3) an arbitrator refused to postpone the hearing upon showing of 
sufficient cause for postponement, refused to consider evidence material to the 
controversy, or otherwise conducted the hearing contrary to Section 15, so as to 
prejudice substantially the rights of a party to the arbitration proceeding; (4) 
an arbitrator exceeded the arbitrator’s powers; (5) there was no agreement to 
arbitrate, unless the person participated in the arbitration proceeding without 
raising the objection under Section 15(c) not later than the beginning of the 
arbitration hearing; or (6) the arbitration was conducted without proper notice 
of the initiation of an arbitration as required in Section 9 so as to prejudice 
substantially the rights of a party to the arbitration 
proceeding.”).

[23] Tex. Civ. Prac. & Rem. 
Code § 171.091(a) (“On application, 
the court shall modify or correct an award if: (1) the award contains: (A) an 
evident miscalculation of numbers; or (B) an evident mistake in the description 
of a person, thing, or property referred to in the award; (2) the arbitrators 
have made an award with respect to a matter not submitted to them and the award 
may be corrected without affecting the merits of the decision made with respect 
to the issues that were submitted; or (3) the form of the award is imperfect in 
a manner not affecting the merits of the controversy.”); cf. Unif. Arbitration Act § 24(a), 7 
U.L.A. 87-88 (2000) (“Upon [motion] made within 90 days after the [movant] receives notice of the award pursuant to Section 19 
or within 90 days after the [movant] receives notice 
of a modified or corrected award pursuant to Section 20, the court shall modify 
or correct the award if: (1) there was an evident mathematical miscalculation or 
an evident mistake in the description of a person, thing, or property referred 
to in the award; (2) the arbitrator has made an award on a claim not submitted 
to the arbitrator and the award may be corrected without affecting the merits of 
the decision upon the claims submitted; or (3) the award is imperfect in a 
matter of form not affecting the merits of the decision on the claims 
submitted.”).

[24] Tex. Civ. Prac. & Rem. 
Code § 171.087; cf. Unif. Arbitration Act § 22, 7 
U.L.A. 76 (2000) (“After a party to an arbitration proceeding receives notice of 
an award, the party may make a [motion] to the court for an order confirming the 
award at which time the court shall issue a confirming order unless the award is 
modified or corrected pursuant to Section 20 or 24 or is vacated pursuant to 
Section 23.”).

[25] Tex. Civ. Prac. & Rem. 
Code § 171.088(a)(3)(A).

[26] City of 
Pasadena v. Smith, 292 S.W.3d 14, 20 
(Tex. 2009) (citing Gulf Oil Corp. v. Guidry, 327 S.W.2d 406, 408 (Tex. 
1959) (“the authority of arbitrators is derived from the arbitration 
agreement”)).

[27] Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 130 S.Ct. 1758, 1773-1774 
(2010) (citations and internal quotation marks omitted).

[28] 9 U.S.C. 
§ 10(a) (“In any of the following cases the United States court in and for 
the district wherein the award was made may make an order vacating the award 
upon the application of any party to the arbitration — (1) where the award was 
procured by corruption, fraud, or undue means; (2) where there was evident 
partiality or corruption in the arbitrators, or either of them; (3) where the 
arbitrators were guilty of misconduct in refusing to postpone the hearing, upon 
sufficient cause shown, or in refusing to hear evidence pertinent and material 
to the controversy; or of any other misbehavior by which the rights of any party 
have been prejudiced; or (4) where the arbitrators exceeded their powers, or so 
imperfectly executed them that a mutual, final, and definite award upon the 
subject matter submitted was not made.”).

[29] Id. § 11 
(“In either of the following cases the United States court in and for the 
district wherein the award was made may make an order modifying or correcting 
the award upon the application of any party to the arbitration — (a) Where there 
was an evident material miscalculation of figures or an evident material mistake 
in the description of any person, thing, or property referred to in the award. 
(b) Where the arbitrators have awarded upon a matter not submitted to them, 
unless it is a matter not affecting the merits of the decision upon the matter 
submitted. (c) Where the award is imperfect in matter of form not affecting the 
merits of the controversy. The order may modify and correct the award, so as to 
effect the intent thereof and promote justice between 
the parties.”).

[30] Id. § 9 
(“If the parties in their agreement have agreed that a judgment of the court 
shall be entered upon the award made pursuant to the arbitration, and shall 
specify the court, then at any time within one year after the award is made any 
party to the arbitration may apply to the court so specified for an order 
confirming the award, and thereupon the court must grant such an order unless 
the award is vacated, modified, or corrected as prescribed in sections 10 and 11 
of this title.”).

[31] Hall St. 
Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 579 (2008).

[32] Id.

[33] Id. at 
592.

[34] Id. at 
586.

[35] Id.

[36] Id. at 
587.

[37] Hall St., 552 
U.S. at 588 (citations, internal quotation marks, and brackets 
omitted).

[38] Id. at 
584.

[39] 9 U.S.C. 
§ 10(a)(4). The only mention of section 10(a)(4) in Hall Street is the observation that “some 
courts have thought[] ‘manifest disregard’ may have been shorthand for § 
10(a)(3) or § 10(a)(4), the paragraphs authorizing vacatur when the arbitrators were ‘guilty of misconduct’ or 
‘exceeded their powers.’” Hall St., 552 U.S. at 
585.

[40] The Supreme 
Court has never addressed section 10(a)(4), except to say, since Hall 
Street, that “[i]t is only when [an] arbitrator 
strays from interpretation and application of 
the agreement and effectively dispense[s] his own brand of industrial justice 
that his decision may be unenforceable”, and that “[i]n that situation, an arbitration decision may be vacated 
under § 10(a)(4) of the FAA on the ground that the arbitrator ‘exceeded [his] 
powers,’ for the task of an arbitrator is to interpret and enforce a contract, 
not to make public policy.” Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 130 S.Ct. 1758, 1767 (2010) (citations and internal quotation 
marks omitted). Stolt-Nielsen did not involve an arbitration 
agreement for expanded judicial review.

[41] Hall St., 552 
U.S. at 586.

[42] Id.

[43] Id.

[44] Id. at 
588.

[45] Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985).

[46] 552 U.S. at 
588 (“Despite the [Dean Witter] opinion’s language ‘reject[ing] the suggestion that the overriding goal of the [FAA] 
was to promote the expeditious resolution of claims,’ the holding mandated 
immediate enforcement of an arbitration agreement; the Court was merely trying 
to explain that the inefficiency and difficulty of conducting simultaneous 
arbitration and federal-court litigation was not a good enough reason to defer 
the arbitration.” (citations and internal quotation 
marks omitted)).

[47] AT&T 
Mobility LLC v. Concepcion, No. 09-893, 
563 U.S. ___, 2011 WL 1561956, at *8 (Apr. 27, 2011) (slip op. at 9-10, 
available at http://www.supremecourt.gov/opinions/10pdf/09-893.pdf) 
(quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 
(1989), and citing Stolt–Nielsen S.A. v. AnimalFeeds Int’l Corp., 130 S.Ct. 1758, 1763 (2010)).

[48] Id. at *9 (slip 
op. at 11) (“‘We . . . are not persuaded by the argument that the 
conflict between two goals of the Arbitration Act — enforcement of private 
agreements and encouragement of efficient and speedy dispute resolution — must 
be resolved in favor of the latter in order to realize the intent of the 
drafters.’” (quoting Dean Witter, 470 U.S. 
221)).

[49] See, 
e.g., Peter F. Gazda, Comment, Arbitration: 
Making Court-Annexed Arbitration an Attractive Alternative in Texas, 16 
St. Mary’s L.J. 409, 426 
(1985).

[50] Hall 
St., 552 U.S. at 588-589 (citations 
omitted).

[51] Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).

[52] Hall St., 552 
U.S. at 588 (citations and internal quotation marks 
omitted).

[53] CVN Group, 
Inc. v. Delgado, 95 S.W.3d 234, 238 
(Tex. 2002) (“Subjecting arbitration awards to judicial review adds expense and 
delay, thereby diminishing the benefits of arbitration as an efficient, 
economical system for resolving disputes. Accordingly, we have long held that 
‘an award of arbitrators upon matters submitted to them is given the same effect 
as the judgment of a court of last resort. All reasonable presumptions are 
indulged in favor of the award, and none against it.’” (quoting City of San 
Antonio v. McKenzie Constr. Co., 150 S.W.2d 989, 996 (Tex. 
1941))).

[54] Cable 
Connection, Inc. v. DIRECTV, Inc., 190 
P.3d 586, 606 (Cal. 2008).

[55] Fairfield 
Ins. Co. v. Stephens Martin Paving, LP, 
246 S.W.3d 653, 664 (Tex. 2008) (construing insurance policy coverage of 
punitive damages) (quoting Wood Motor Co. v. Nebel, 238 S.W.2d 181, 185 (Tex. 1951) (construing 
contract termination clause) (quoting Printing & Numerical Registering 
Co. v. Sampson, 19 L.R. Eq. 462, 465, 1874 WL 16322 (1875))); see 
also Gym-N-I Playgrounds, Inc. v. Snider, 220 S.W.3d 905, 912 (Tex. 
2007) (construing commercial lease expressly waiving warranties) (quoting 
Wood); BMG Direct Mktg., Inc. v. Peake, 
178 S.W.3d 763, 767 (Tex. 2005) (construing liquidated damages clause) (quoting 
Wood and Sampson); In re Prudential Ins. Co. of Am., 148 
S.W.3d 124, 129 n.11 (Tex. 2004) (construing contractual jury waiver) (quoting 
Wood and Sampson); Mo., Kan. & Tex. Ry. Co. of Tex. v. 
Carter, 68 S.W. 159, 164 (Tex. 1902) (construing contract waiving 
responsibility for fires caused by railroad engines) (quoting 
Sampson).

[56] See 
Fairfield, 246 S.W.3d at 655; Town 
of Flower Mound v. Stafford Estates Ltd. P’ship, 
135 S.W.3d 620, 628 (Tex. 2004) (“Generally, ‘the State’s public policy is 
reflected in its statutes.’” (quoting Tex. Commerce Bank, 
N.A. v. Grizzle, 96 S.W.3d 240, 250 (Tex. 2002))); FM 
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 873 
(Tex. 2000).

[57] In re AIU 
Ins. Co., 148 S.W.3d 109, 122 (Tex. 
2004) (Phillips, C.J., dissenting) (“The right to arbitration has been 
guaranteed in every Texas constitution.” (citing Tex. Const. art. XVI, 
§ 13 (repealed 1969); Tex. Const. of 1869, art. XII, § 11; Tex. Const. of 1866, art. VII, § 15; Tex. Const. of 1861, art. VII, § 15; Tex. Const. of 1845, art. VII, § 15)); id. at 122 n.1 (“Each constitution 
provided that it is ‘the duty of the Legislature to pass such laws as may be 
necessary and proper to decide differences by arbitration, when the parties 
shall elect that method of trial.’ Tex. 
Const. 1876, 
art. XVI, § 13 (repealed 1969). 
This section was repealed by the voters in 1969 as one of the ‘obsolete, 
superfluous and unnecessary sections of the Constitution.’ Tex. H.J.R. No.3, 
6lst Leg., R.S., 1969 Tex. Gen. Laws 3230. The House Joint Resolution stated 
that the repealer was not intended to ‘make any 
substantive changes in our present constitution.’ Id.”).

[58] Tex. Civ. Prac. & Rem. 
Code § 171.088(a)(3)(A).

[59] In re 
Poly-America, L.P., 262 S.W.3d 337, 348 
(Tex. 2008) (“Unconscionability is to be determined in 
light of a variety of factors, which aim to prevent oppression and unfair 
surprise; in general, a contract will be found unconscionable if it is grossly 
one-sided.”).

[60] 552 U.S. 576, 582 n.2 (2008).

[61] Tex. Civ. Prac. & Rem. Code 
§ 171.003.

[62] See Raymond 
James Fin. Servs., Inc. v. Honea, 55 So. 3d 1161, 
1170 (Ala. 2010); Cable Connection, Inc. v. DIRECTV, Inc., 190 P.3d 586, 
606 (Cal. 2008); Tretina Printing, Inc. v. 
Fitzpatrick & Assocs., Inc., 640 A.2d 788, 793 (N.J. 1994); see also 
HH East Parcel, LLC v. Handy & Harman, Inc., 947 A.2d 916, 926 n.16 
(Conn. 2008).

[63] See 
Brookfield Country Club, Inc. v. St. James-Brookfield, LLC, 696 S.E.2d 
663, 667 (Ga. 2010); HL 1, LLC v. Riverwalk, 
LLC, 15 A.3d 725, 736 (Me. 2011); John T. Jones Constr. Co. v. City of 
Grand Forks, 665 N.W.2d 698, 704 (N.D. 2003); Pugh’s Lawn Landscape Co. 
v. Jaycon Dev. Corp., 320 S.W.3d 252, 261 (Tenn. 
2010); Barnett v. Hicks, 829 P.2d 1087, 1095 (Wash. 1992); see 
also Dick v. Dick, 534 N.W.2d 185, 190-191 (Mich. Ct. App. 1995); 
Trombetta v. Raymond James Fin. Servs., Inc., 907 A.2d 550, 576 (Pa. Super. Ct. 2006).

[64] The FAA 
applies to maritime transactions and transactions involving commerce, 9 U.S.C. 
§ 2, defined as follows: “‘Maritime transactions’, as herein defined, means 
charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, 
collisions, or any other matters in foreign commerce which, if the subject of 
controversy, would be embraced within admiralty jurisdiction; ‘commerce’, as 
herein defined, means commerce among the several States or with foreign nations, 
or in any Territory of the United States or in the District of Columbia, or 
between any such Territory and another, or between any such Territory and any 
State or foreign nation, or between the District of Columbia and any State or 
Territory or foreign nation, but nothing herein contained shall apply to 
contracts of employment of seamen, railroad employees, or any other class of 
workers engaged in foreign or interstate commerce.” 9 U.S.C. 
§ 1.
 
                
 Quinn argued in the court of 
appeals that her agreement with Nafta did not involve 
interstate commerce, but she has abandoned that argument in this Court, and in 
any event, there is no serious argument that her agreement as Vice President of 
Operations of a business with national and international sales did not involve 
interstate commerce.
 
                
 The TAA applies to written 
arbitration agreements, Tex. Civ. Prac. 
& Rem. Code § 171.001, except as follows:
 
                
 “(a) This chapter does not apply to:
(1) a collective bargaining 
agreement between an employer and a labor union;
(2) an agreement for the acquisition by one or more 
individuals of property, services, money, or credit in which the total 
consideration to be furnished by the individual is not more than $50,000, except 
as provided by Subsection (b);
(3) a claim for personal 
injury, except as provided by Subsection (c);
(4) a claim for workers’ 
compensation benefits; or
                                
 (5) an agreement made before January 1, 1966.
 
                
 “(b) An agreement described 
by Subsection (a)(2) is subject to this chapter 
if:
(1) the parties to the 
agreement agree in writing to arbitrate; and
(2) the agreement is signed by 
each party and each party’s attorney.
 
                
 “(c) A claim described by 
Subsection (a)(3) is subject to this chapter 
if:
(1) each party to the claim, on 
the advice of counsel, agrees in writing to arbitrate; and
(2) the agreement is signed by 
each party and each party’s attorney.”
 
Id. 
§ 171.002.
 
                
 As the court of appeals 
noted, the parties have not disputed the applicability of the TAA to their 
agreement.
 
                
 The TAA and the FAA may both 
be applicable to an agreement, absent the parties’ choice of one or the other. 
In re L & L Kempwood Assocs., 
L.P., 9 S.W.3d 125, 127-128 (Tex. 1999) (per curiam).

[65] Volt Info. 
Scis., Inc. v. Bd. of Trs. 
of Leland Stanford Junior Univ., 489 
U.S. 468, 477 (1989) (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).

[66] Id. 
at 478 (citations, punctuation, and 
internal quotation marks omitted).

[67] In re D. 
Wilson Constr. Co., 196 S.W.3d 774, 780 
(Tex. 2006) (citations, brackets, emphasis, and internal quotation marks 
omitted).

[68] Volt, 489 U.S. 
at 470.

[69] Id. at 471 
(quoting Cal. Civ. Proc. Code 
§ 1281.2(c)(3) (West 
1982)).

[70] Id. at 478-479 
(citations and internal quotation marks omitted).

[71] Id. at 477 n.6 
(“While we have held that the FAA’s ‘substantive’ provisions — §§ 1 and 2 — 
are applicable in state as well as federal court, see Southland Corp. v. 
Keating, 465 U.S. 1, 12 (1984), we have never held that §§ 3 and 4, 
which by their terms appear to apply only to proceedings in federal court, see 9 
U.S.C. § 3 (referring to proceedings ‘brought in any of the courts of the 
United States’); § 4 (referring to ‘any United States district court’), are 
nonetheless applicable in state court. See Southland Corp. v. Keating, 
supra, at 16, n. 10 (expressly reserving the question whether ‘§§ 3 and 
4 of the Arbitration Act apply to proceedings in state courts’); see also 
id., at 29 (O’Connor, J., 
dissenting) (§§ 3 and 4 of the FAA apply only in federal court).”); see 
also Vaden v. Discover Bank, 129 
S.Ct. 1262, 1279 n.20 (2009) (stating that “[t]his 
Court has not decided whether §§ 3 and 4 apply to proceedings in state courts,” 
citing Volt); Cable Connection, Inc. v. DIRECTV, Inc., 190 P.3d 
586, 597 n.12 (Cal. 2008) (stating that the FAA’s procedural provisions do not 
apply in state court proceedings). We need not resolve the issue 
here.

[72] 9 U.S.C. § 10.

[73] AT&T 
Mobility LLC v. Concepcion, No. 09-893, 
563 U.S. ___, 2011 WL 1561956, at *8 (Apr. 27, 2011) (slip op. at 9-10, 
available at http://www.supremecourt.gov/opinions/10pdf/09-893.pdf) 
(quoting Volt); Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 130 S.Ct. 1758, 1773-1774 (2010) (“While the interpretation of 
an arbitration agreement is generally a matter of state law, the FAA imposes 
certain rules of fundamental importance, including the basic precept that 
arbitration is a matter of consent, not coercion . . . . 
[W]e have said on numerous occasions that the central or primary purpose of the 
FAA is to ensure that private agreements to arbitrate are enforced according to 
their terms . . . . Whether enforcing an agreement to arbitrate or 
construing an arbitration clause, courts and arbitrators must give effect to the 
contractual rights and expectations of the parties . . . . [W]e have held that 
parties are generally free to structure their arbitration agreements as they see 
fit . . . and may agree on rules under 
which any arbitration will proceed.” (citing 
Volt, 489 U.S. at 479) (citations and internal 
quotation marks omitted)).

[74] A state law 
that both denies enforcement of the parties’ agreement and defeats arbitration’s 
goal of expedition is, not surprisingly, preempted. Concepcion, 2011 WL 
1561956 (holding that the California rule, regarding the unconscionability of class arbitration waivers in consumer 
contracts, from Discover Bank v. Superior Court, 113 P.3d 1100 (Cal. 
2005), is preempted by the FAA).

[75] Hall 
St. 
Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 
576, 590 (2008).

[76] Id. at 596 
(Breyer, J., dissenting) (emphasis added) (citation 
omitted).

[77] See Cable 
Connection, Inc. v. DIRECTV, Inc., 
190 P.3d 586, 595-599 (Cal. 2008).

[78] See Mastrobuono v. Shearson Lehman Hutton, Inc., 
514 U.S. 52, 64 (1995) (holding that an agreement that did not unambiguously 
limit the scope of arbitration by choosing a state-law rule did not effectively 
do so under the FAA).

[79] In ruling on 
motions to confirm, alter, or vacate an arbitration award, a trial court 
reviewing the award for reversible error serves an appellate 
function.

[80] In appeals 
from judicial proceedings, the requirements for preserving complaints and for 
the record are set out, respectively, in Rules 33 and 34 of the Texas Rules of 
Appellate Procedure. Although these rules are not written for appeals from 
arbitration awards, their principles should govern such 
appeals.

[81] See 
also Cable Connection, 190 P.3d 
at 605 (“Some courts have expressed concern that arbitration is so different 
from judicial proceedings that courts would be unable to adequately review the 
substance of arbitrators’ decisions. . . . Problems with the record 
are not reflected in the cases, but in the event they arise, there is a ready 
solution in the familiar rule that the decision under review is presumed correct 
on matters where the record is silent.”).

[82] Id. (citations 
omitted) (quoting LaPine Tech. Corp. v. 
Kyocera Corp., 130 F.3d 884, 891 (9th Cir. 1997) (Kozinski, J., 
concurring)).